## CENTRAL TRUST CO. OF NEW YORK v. BENEDICT et al.

(Circuit Court of Appeals, Eighth Circuit. January 25, 1897.)

No. 797.

JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES—INTERVENTIONS IN FORE-CLOSURE RECEIVERSHIP CASES.

On July 1, 1885, the G. R. Co. made a first mortgage to the C. Trust Co., a New York corporation, and a second mortgage to B. and others, who were citizens of New York. Subsequently, on the same day, the G. R. Co. entered into a traffic agreement with the U. P. Ry. Co., by which it was provided that the G. R. Co. should be operated by the U. P. Ry. Co., and also that certain

cash in the treasury of the G. R. Co. and the proceeds of a part of the first mortgage bonds should be deposited with the C. Trust Co., to be expended, under the joint direction of the president of the U. P. Co. and the trustees of the second mortgage of the G. R. Co., in improving that company's road. The money was deposited, and a part of it spent, leaving a balance in the hands of the C. Trust Co. Thereafter A. and others, stockholders of the U. P. Co., brought suit against it, alleging its insolvency, and praying the court to settle all controversies between it and its creditors and leased lines, to marshal its assets, and liquidate its affairs. The G. R. Co. and other leased lines of the U. P. Co. were made parties, and its mortgages were set out in the bill. Receivers of the U. P. Co. and its leased lines were appointed under the bill. The C. Trust Co. then brought suit for the foreclosure of the first mortgage on the G. R. Co., and the same receivers were appointed in this suit. The trustees of the second mortgage of the G. R. Co. filed an intervening petition in the same courts in which both the suit of A. and others against the U. P. Co. and the C. Trust Co.'s suit against the G. R. Co. were pending, asking an allowance out of the balance of the fund in the hands of the C. Trust Co., as compensation for their services in supervising the disbursement of the fund. The C. Trust Co. answered the petition, objecting to the jurisdiction of the court, and also claiming a lien on the fund for its own services. A master reported that the trustees were entitled to the whole balance of the fund as compensation. *Held*, that notwithstanding the C. Trust Co. and the trustees were citizens of the same state, since the making of an order granting the trustees compensation out of the fund was properly incident to the granting of full relief in the suit of A. and others against the U. P. Co., and since the C. Trust Co. was a mere depositary of the fund, and had no valid claim of its own against it, the court had jurisdiction to make such order for compensating the trustees out of the fund.

## Appeal from the Circuit Court of the United States for the District of Nebraska.

This was an intervening petition filed by the appellees, James H. Benedict, Isaac H. Bromley, and F. K. Pendleton, in the circuit courts of the United States for the districts of Nebraska, Kansas, and the Western district of Missouri, which was subsequently heard and determined in the district of Nebraska. The controversy arose out of the following facts, concerning which there is no substantial dispute:

On July 1, 1885, the St. Joseph & Grand Island Railroad Company, a corporation of the state of Kansas, made its first mortgage to the Central Trust Company of New York, the appellant herein, as trustee, to secure an issue of bonds to the amount of $7,000,000. At the same time, it made its second mortgage to the appellees, James H. Benedict, Isaac H. Bromley, and Frank K. Pendleton, as trustees, to secure an issue of $1,679,000 second mortgage bonds. On July 1, 1885, the St. Joseph & Grand Island Railroad Company entered into an agreement with the Union Pacific Railway Company, dated on that day, known as the "Traffic Agreement." By that agreement, it was, in substance, provided that the railroad of the St. Joseph & Grand Island Company should be operated by the Union Pacific Railway Company, and that the earnings of the business should be divided between the two companies on a basis which was specified in the agreement. Said agreement contained, among other things, the following provision: "And it is hereby further mutually agreed by and between the parties hereto that whereas, the said party of the first part (the St. Joseph & Grand Island Railroad Company) now has the sum of about two hundred and eighty-five thousand ($285,000) dollars in cash in the treasury, and that a certain number of first mortgage bonds, to wit, the amount of about four hundred thousand ($400,000) dollars, have been reserved for improvements, it being the intention that the same shall be sold, and the proceeds, together with the sum of two hundred and eighty-five thousand ($285,000) dollars, now on hand as above mentioned, shall be used and applied to the making of improvements, the purchase of steel rails, rolling stock, etc., for the railroad of said party of the first part: Now, then, it is hereby agreed that the said fund, amounting to about seven hundred thousand ($700,000) dollars, as aforesaid, shall be deposited in the Central Trust Company of the City

of New York, to be used and expended for the purposes above mentioned, under the joint order of the president of the Union Pacific Railway Company, party of the second part, and a majority of the trustees mentioned in the second mortgage of the party of the first part above referred to." Under the foregoing provision of said agreement, moneys amounting in all to $1,060,992.69 came into the possession of the Central Trust Company of New York, out of which there was drawn the sum of $1,048,087.39, leaving a balance in the hands of the trust company at the time of the filing of the petition amounting to $12,905.30. On October 9, 1893, Oliver Ames, 2d, and others, filed their bill of complaint in equity in the circuit court of the United States for the district of Nebraska, against the Union Pacific Railway Company and others, including the St. Joseph & Grand Island Railroad Company, alleging the insolvency of the Union Pacific Company, setting forth the nature of the liens upon and the claims against its property, and praying that the court would administer the trust fund, marshal the assets, ascertain the liens and priorities, appoint receivers to preserve the property as a system, and enforce the rights and equities of the complainants and all the stockholders and creditors of the Union Pacific Railway Company. Neither the Central Trust Company of New York, nor the appellees herein, Benedict, Bromley, and Pendleton, as trustees, were made parties to the bill. It was alleged in the bill, among other things, that the Union Pacific Railway Company owned $2,301,500 of the capital stock of the St. Joseph & Grand Island Railroad Company out of a total issue of $4,-551,100, and that the railroad of the last-mentioned company was incumbered by the two mortgages hereinbefore described. Under this bill, S. H. H. Clark, Oliver W. Mink, E. Ellery Anderson, John W. Doane, and Frederick R. Coudert were appointed receivers. On December 29, 1894, the Central Trust Company of New York, as trustee under the first mortgage of the St. Joseph & Grand Island Railroad Company, filed its bill of complaint for the foreclosure of said first mortgage against the mortgagor company, the Union Pacific Railway Company, and against Benedict, Bromley, and Pendleton, trustees in the second mortgage. On August 27, 1895, an order was made in that suit appointing the same persons receivers of the mortgaged property, who had been theretofore appointed under the bill filed by Oliver Ames, 2d, and others.

Prior to the entry of the last-mentioned order, and on August 6, 1895, Messrs. Benedict, Bromley, and Pendleton, trustees of the second mortgage of the St. Joseph & Grand Island Railroad Company, filed in the three courts in which the Central Trust Company's bill of foreclosure was pending, namely, in the circuit courts of the United States for the districts of Nebraska, Kansas, and the Western district of Missouri, their intervening petition to be allowed compensation for their services in supervising the disbursement of the fund that had been deposited with the Central Trust Company, in manner aforesaid, under the provisions of the aforesaid traffic agreement. They demanded, in substance, that the entire fund remaining in the hands of the Central Trust Company, to wit, $12,905.30, be paid to them as compensation for their services. Upon this petition, the circuit court made an order, referring the petition and the answers thereto to the Honorable W. D. Cornish, who had been theretofore appointed as special master in the aforesaid cases, and directed that copies of the petition and order be served upon the Central Trust Company, as trustee under the first mortgage made by the St. Joseph & Grand Island Railroad Company. The Central Trust Company filed an answer, in which, among other things, it averred that the said intervening petition which had been filed "shows upon its face that this court has no jurisdiction to entertain the same." By the answer in question, the Central Trust Company also put in issue the extent and value of the alleged services that had been rendered by the interveners. It further alleged, at the conclusion of its answer, that it had a lien upon said balance in its hands for the amount of its reasonable compensation for its services in connection therewith, and for its expenses in respect thereto. The special master, to whom the case was referred, subsequently made his report, in which he found, in substance, that the fund unexpended was the property of the St. Joseph & Grand Island Railroad Company, subject to the provisions of the traffic agreement of July 1, 1885; that the receivers appointed in the above-mentioned suits had never taken actual possession of the fund; and that the petitioners were entitled to the whole fund, as compensation for their services. The Central Trust Company excepted to this report. The exceptions were overruled; the report of the master was confirmed; and an order was thereupon made

in accordance with the recommendations of the master, directing that the fund in controversy be paid to the interveners. From the order so made, the trust company has appealed.

Adrian H. Joline and Butler, Stillman & Hubbard, for appellant.
F. K. Pendleton and Parrish & Pendleton, for appellees.

Before CALDWELL and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The principal question discussed by counsel in their briefs is whether the circuit court had jurisdiction to make the order from which the appeal was taken. In this behalf it is contended for the appellant that inasmuch as the circuit court could not have entertained a suit between the appellant and the appellees, both of them being citizens of the state of New York, and inasmuch as it had not acquired possession of the fund in controversy, either actual or constructive, it had no power to make the order appealed from, and the same is void. It may be conceded that the jurisdictional point would have great weight if the order made by the circuit court was not properly incident to the granting of full and complete relief in the suit of Ames et al. against the Union Pacific Railway Company et al., which is referred to in the foregoing statement, and if it was true that the Central Trust Company had an interest in the fund in controversy, other than that of a mere depositary. But if the suit brought by Ames et al. against the Union Pacific Railway Company et al. was of such a nature as rendered it necessary or proper in that proceeding to administer upon the fund in controversy, and if, at the time the order was made, the trial court had before it all the parties who had a proprietary interest in the fund, and authority to control the disbursement of the same, then we do not see that the validity of the order can be successfully challenged. It admits of no doubt that the Central Trust Company (hereafter termed the "Trust Company") was a mere depositary of the fund. It held it at all times as a banker, subject to the order of the president of the Union Pacific Railway Company and the appellees, or a majority of them, who were trustees in the second mortgage executed by the St. Joseph & Grand Island Railroad Company (hereafter termed the "Grand Island Company"). The trust company had no proprietary interest in or lien upon the fund in question. The traffic agreement named the trust company as the depositary of the fund, but it gave it no power of control over the same, other than the power to disburse it pursuant to orders and directions from time to time given by the president of the Union Pacific Railway Company and the trustees in the second mortgage. The master properly held and reported that the fund belonged to the Grand Island Company, and that the appellees and the president of the Union Pacific Railway Company, the latter acting in an official capacity, were trustees of the fund, having the sole power to disburse it for the purposes named in the traffic agreement. In no aspect of the case, so far as we can see, was the trust company

given any authority to control the expenditure of the fund, or to refuse to pay drafts that might be drawn upon the fund by the trustees, who had been appointed to expend it. In a certain sense, the trust company was a mere subagent of the trustees, whose orders, when drawn upon the fund, it was bound at all times to honor. Such appear to have been the conditions under which the deposit with the trust company was made.

Passing to the second inquiry above suggested, we think it is manifest that the suit of Ames et al. against the Union Pacific Railway Company et al. was of such a nature and contemplated such relief that the circuit court, by an order made in that case, could properly dispose of the fund in controversy, especially after the appellees, as trustees in the second mortgage, had made themselves parties to the proceeding. It was a suit brought by the stockholders of an insolvent corporation to wind up the company on the ground of its insolvency, to adjust and settle all controversies between the Union Pacific Railway Company and its creditors, and between that company and its leased lines, including the Grand Island Company, and, generally, to marshal all the corporate assets, and to liquidate the company's affairs. When the appellees, Messrs. Benedict, Bromley, and Pendleton, made themselves parties to the Ames suit, and asked for an allowance against the fund in controversy, we do not perceive that there was any lack of power in the court to grant the relief prayed for, and to dispose of the fund. All parties who had a beneficial interest in the fund, or power to control its disbursement, to wit, the Union Pacific Railway Company, the Grand Island Company, and the trustees in its second mortgage, were then before the court, and, by virtue of this fact, the fund itself became subject to the orders of the court. Vermont & C. R. Co. v. Vermont Cent. R. Co., 46 Vt. 792; Chaffee v. Quidnick Co., 13 R. I. 442; Sercomb v. Catlin, 128 Ill. 556, 21 N. E. 606; Langford v. Langford, 5 Law J. Ch. (N. S.) 60; Schindelholz v. Cullum, 12 U. S. App. 242, 249, 5 C. C. A. 293, and 55 Fed. 885; Glück & B. Rec. p. 978. The result might be different if the trust company showed any substantial right to the fund which it could interpose, as against the Union Pacific Railway Company and the trustees in the second mortgage of the Grand Island Company, for whose benefit the fund was created. But such is not the fact. This record fails to disclose any such right. Inasmuch as the trust company held the fund merely as a banker, it does not appear that there was any reasonable foundation for the allegation that the trust company had a lien upon the balance of the fund in its hands. The record shows that the trust company is simply a depositary of the fund, and that it holds it subject to the disposal of the parties last named. As against them and the Grand Island Company, the trust company can assert no adverse right. Moreover, occupying such a position, the trust company is not concerned in the question whether the appellees were entitled to compensation for their services as trustees in supervising the expenditure of the fund, nor in the further question whether the compensation allowed to them by the trial court was excessive. Having no valid claim of its

own against the fund, and being a mere debtor of the Grand Island Company, it is only concerned in the question whether the order made by the trial court will protect it from all further claims on the part of those to whom the fund belongs. We have no doubt that the order made will afford it such protection. The order appealed from is therefore affirmed.